IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CHAD AUSTGEN,** | |
| Plaintiff, | |
| v. | C.A. No. 4:18-cv-00949 |
| **ALLIED BARTON SECURITY SERVICES, LLC, n/k/a Allied Universal,** | JURY DEMANDED |
| Defendant | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Chad Austgen ("Mr. Austgen" or "Plaintiff") files this Response to Defendant's Motion for Summary Judgment based on Allied Barton Security Services, LLC, n/k/a Allied Universal ("Defendant") Motion for Summary Judgment, and shows as follows:

## I.    NATURE OF THE CASE

Mr. Austgen filed his lawsuit against Defendant for disability (including perceived disability and a report of a disability) discrimination under the American's with Disabilities Act ("ADA"), and retaliation under the ADA and ADAA. This case also involves a failure to accommodate as Defendant failed to engage in any good faith accommodation interaction process according to law and forced Mr. Austgen, who was injured in Afghanistan during the military, to take unpaid leave for 30 days and left his not knowing whether he even had a job.

1

## II.      FACTUAL BACKGROUND

**Chad Austgen's Military Experience and History.**

Plaintiff is an accomplished leader, program and project manager with a strong analytical and security background. Austgen Affidavit; ¶ 2. Plaintiff has over five years of professional experience as an intelligence specialist and non-commissioned officer in the United States Marine Corps Reserve. Austgen Affidavit; ¶ 2. Plaintiff has over two years' experience as a civilian intelligence professional focusing on all source, human and political intelligence, including special operations experience and several years of experience leading intelligence teams and projects. Austgen Affidavit; ¶ 2. Plaintiff has excelled consistently and is pursuing a master's degree in statistics.; Austgen Affidavit; ¶ 2.

**Chad's Employment with Defendant.**

Plaintiff began working for Defendant in January 2016 as a Licensed Security Officer. Defendant hired Plaintiff as their employee; not at a particular site. Austgen Affidavit; ¶ 3.

Unfortunately, as a result of his service in Iraq as a United States Marine, Plaintiff suffers from chronic back pain. Austgen Affidavit; ¶ 4.

Defendant assigned Plaintiff to the Port of Houston. His post was one of three out of twenty total that required extensive climbing in and out and under commercial vehicles. Austgen Affidavit; ¶ 5.

**Chad's Notification of Back Injury and Request for Accommodations.**

After nine (9) months of such extensive daily climbing in and out of and under commercial vehicles his back injury became seriously aggravated. Austgen Affidavit; ¶ 6.

Plaintiff initially raised the issue of his injury with Defendant's agent, Terri Hinojosa on September 1, 2016.  Austgen Affidavit; ¶ 7, Exhibit 4; August 1, 2016 Text Message between

2

Plaintiff and Hinojosa, Exhibit 5; Email Chain between Katherine Alyea and Dave Rekow. Plaintiff did not state that he was unable to perform the duties of his position. Austgen Affidavit; ¶ 7. Plaintiff said that he was experiencing some pain and made the accommodation request that he be switched to a different post as a reasonable accommodation. Austgen Affidavit; ¶ 7.

**Defendant's Failure to Accommodate Plaintiff's Request for Accommodations.**

Instead of accommodating him or providing him with his job duties and asking him to see a physician in order to ascertain whether they could accommodate him,

**Instead, Defendant Directs Plaintiff to go Home.**

Defendant told Plaintiff that he could not return to work and he was given a fit for duty form and instructed that he needed to have a doctor fill out the form before he'd be able to return to his same position. Austgen Affidavit; ¶ 8, Exhibit 6; Email Chain between Katherine Alyea and Dave Rekow.

Plaintiff was not promised his position back nor did he request leave. Austgen Affidavit; ¶ 9.

Instead, Defendant sent him home, without pay. Austgen Affidavit; ¶ 10.

Defendant failed to tell Plaintiff he was on leave. Austgen Affidavit; ¶ 11. Plaintiff made attempts to inquire if his job was being held including by text message with Terri Hinojosa and no one ever confirmed that he remained employed or that his job was being held. Austgen Affidavit; ¶ 11, Exhibit 4; August 1, 2016 Text Message between Plaintiff and Hinojosa.

**The Retroactive Leave.**

Katherine Aylea placed Plaintiff on unpaid leave retroactively on September 14, 2016, "to protect your job status" only after he'd retained the services of an attorney. Austgen Affidavit; ¶ 12, Exhibit 3; September 14, 2016 Letter to Chad Austgen from Christon Crum. There was no

interactive accommodation process. Austgen Affidavit; ¶ 12. Once Plaintiff made the complaint he was immediately expelled from his position. Austgen Affidavit; ¶ 12.

**Defendant tells the EEOC that it was Plaintiff who Requested Unpaid Leave.**

To the contrary, Defendant informed the EEOC after Plaintiff filed his Charge of Discrimination that Chad requested leave; that is a blatant lie. AUSTGEN Allied Universal EEOC Position Statement, Exhibit 6.

**It is Plaintiff who Engages in the Good Faith Interactive Accommodation Process**

Plaintiff went to a doctor on his own and gave the doctor a list of job duties for his posts and 19 other posts. Austgen Affidavit; ¶ 13, Exhibit 1; Fitness for Duty for Form signed by Doctor. The doctor recommended that he could work at all but 3 of the 20 posts at the Houston Port for Allied Universal. Austgen Affidavit; ¶ 13, Exhibit 1; Fitness for Duty for Form signed by Doctor.

Defendant never gave Plaintiff a list of job duties for his job or any job. Austgen Affidavit; ¶ 14.

Plaintiff's request was to move to one of the 17 of 20 posts where he did not have to climb in and out of commercial vehicles all day on a daily basis. Austgen Affidavit; ¶ 15. This would have been a reasonable and easy fix for Defendant. Austgen Affidavit; ¶ 15.

On September 23, 2016 Plaintiff delivered a fit for duty form with recommendations that he could be assigned to 20+ other posts by his physician. Austgen Affidavit; ¶ 16, Exhibit B; Fitness for Duty Form signed by Doctor. Plaintiff was informed by Terri that this fit for duty form was not sufficient to satisfy their requirements because it did not well enough describe the physical limitations of his injury. Austgen Affidavit; ¶ 16. Plaintiff returned to his physician and procured another fit for duty form which he delivered on September 26, 2016. Austgen Affidavit; ¶ 16, Exhibit 1; Fitness for Duty for Form signed by Doctor. On September 27, 2016, Katherine Aylea

4

informed Plaintiff that there were contractual obligations in place that do not allow for accommodations at the Port of Houston. Austgen Affidavit; ¶ 16.

Later in that conversation Katherine expressed that Terri Hinojosa had never informed her they don't make any accommodations for the contract positions at the Port of Houston and asked if Plaintiff had been made aware. Austgen Affidavit; ¶ 17. Katherine stated in a frustrated manner that it was "good to know now." Austgen Affidavit; ¶ 17.

**Plaintiff Suffers an Adverse Action – Defendant Fails to Pay Him for the Leave.**

After a month of not being paid and being forced on leave, not being sure if he had a job and Defendant wholly failing to engage in a good faith interactive accommodation practice, Defendant then transferred Plaintiff into a contractor supervisor position at Phillips 66 which paid less than supervisor positions at Defendant's Port of Houston location. Austgen Affidavit; ¶ 18. At that point Plaintiff was out a month's salary and was humiliated having no income. Austgen Affidavit; ¶ 18.

Defendant did not timely engage in a good faith interactive process regarding Plaintiff's accommodation request when he informed them of his need for such. Austgen Affidavit; ¶ 19. Defendant did not provide Plaintiff with a job description of his duties and ask him to bring it to his physician to complete. Austgen Affidavit; ¶ 19. Defendant also did not ask Plaintiff to go to another doctor with a list of job duties for an evaluation. Austgen Affidavit; ¶ 19. Instead, Defendant told Plaintiff to go home without pay. Austgen Affidavit; ¶ 19.

Later, after the fact on September 15, 2016, Defendant informed him that he was unpaid leave retroactive to September 5, 2016. Austgen Affidavit; ¶ 19, Exhibit 6; Email Chain between Katherine Alyea and Dave Rekow. Plaintiff did not know if he still had a job or was terminated as he was not getting paid. Austgen Affidavit; ¶ 19.

The failure to timely and properly accommodate Plaintiff caused him physical pain as well as mental anguish and left him without any salary. Austgen Affidavit; ¶ 20.

Plaintiff has stated several times that the accumulated stress of constantly working at the few posts at the port that require those levels of bending and twisting were what caused aggravation to his injury. Austgen Affidavit; ¶ 21. He would have been able to perform these duties as necessary if Defendant had given him the requested accommodation of being moved to any of the 20+ posts available. Austgen Affidavit; ¶ 21. Plaintiff would have also been able to occasionally work the posts from which he was requesting a transfer if Defendant had given that transfer. Austgen Affidavit; ¶ 21.

**Defendant Fails to Pay Plaintiff the Wage He Should be Earning.**

Plaintiff was paid the same wage as his previous position, but at a different rate and scale. Austgen Affidavit; ¶ 22. His equivalent position at the port, that of a supervisor, would have been paid $25 dollars per hour. Austgen Affidavit; ¶ 22. Since Plaintiff was at a different contract site, Defendant refused to pay him this higher wage for the job he was actually doing. Austgen Affidavit; ¶ 22.

Plaintiff's back injury does not currently affect his lifestyle because he has structured his life around his limitations. Austgen Affidavit; ¶ 23. Plaintiff is not climbing in and out of commercial vehicles on a daily basis. Austgen Affidavit; ¶ 23.  Plaintiff does not consider chronic nerve pain which was partially repaired with spinal surgery to be a minor injury. Austgen Affidavit; ¶ 23. Plaintiff chooses hobbies, like online gaming, because he has aggravated his injury several times in the past by exercising, doing yard work, and with other physical activities. Austgen Affidavit; ¶ 23. His job as a military contractor was that of an analyst. Austgen Affidavit; ¶ 23. Plaintiff was not allowed to carry a weapon or leave base nor was he permitted to do work outside of the scope

6

of his contract. Austgen Affidavit; ¶ 23. He worked on a computer behind a desk. Austgen Affidavit; ¶ 23.

Plaintiff was discharged from the Marine Corps due to his back injury. Austgen Affidavit; ¶ 23.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56 (a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The movant, "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf Inc., v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp., v. Catrett,* 477 U.S 317, 322-25 (1986).

Under Federal Rule of Civil Procedure 56(a), the moving party bears the initial burden of "informing the district court of the basis for the motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291 (5th Cir. 1987).  If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Alan v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted).

### IV.    ARGUMENTS AND AUTHORITIES

#### A.  Defendant violated the ADAAA when it Perceived Chad Austgen as Disabled

Instead of engaging in the good faith interactive process regarding Austgen's requests for accommodations regarding a position he could do (turns out it was 17 of 20 positions at the Port of Houston) Defendant ordered Plaintiff home on a 30-day unpaid leave, leaving him to believe he might have lost his job.

8

After being called on the carpet, Katherine Aylea sent Chad a letter, only now (over 10 days later) telling Chad that he was retroactively on unpaid leave. Exhibit

In cases such as Chad's where the employer treats him if he has a disability affecting his daily life activities such as working, twisting, bending or crawling, courts look to a  "regarded as" or "perceived as" theories under the ADAAA and the employee no longer need to show that their impairment limits a major life activity.

Defendant regarded Chas as disabled when they forced him to leave employment and not be paid.

Chad prevails by establishing "he has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "This `whether or not' language was enacted as part of the ADA Amendments Act of 2008 [("ADAAA")]." *Mendoza v. City of Palacios,* 962 F.Supp.2d 868, 871 (S.D.Tex. 2013).

The ADAAA overrules prior authority "requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity." *Dube v. Texas Health & Human Servs. Comm'n,* Case No. SA-11-CV-354-XR, 2012 WL 2397566, at *3 (W.D.Tex. June 25, 2012);*see also Neely v. PSEG Texas, Ltd. P'ship,* 735 F.3d 242, 245 (5th Cir.2013).

When Katherine Aylea sent Chad Austgen home, unpaid, after he told her his back hurt and asked for accommodations by transfer to one of the other 17 jobs at the Port he could do, she showed that the employer regarded his as disabled from doing his job. When she sent a letter over 10 days letter telling him his forced, unpaid leave was now retroactive and that he could not come back until he had a fit for duty document from a physician, she confirmed that the company regarded his as disabled. When the company tried to cover up that they forced Chad to take leave

and stated to the EEOC that he requested leave, they took away all doubt as to how they perceived Chad.

In *Burton v. Freescale Semiconductor, Inc.,* The Court stated that they "Have not yet determined what it means to be "regarded as" impaired under the ADAAA,[8] but section 12102(3)(A) is clear, as is its application here. Burton need only show that her "employer perceived [her] as having an impairment" and that it discriminated against her on that basis. *Mendoza,* 962 F.Supp.2d at 871.

Defendant did just that.

The Court went on to state that Freescale argues it was "not aware Burton had a disability." They found no shortage of contrary evidence. Freescale conceded "some evidence was raised showing that Akroyd was aware that Burton had received medical treatment."

The same is true here. Defendant was made aware of Chad's medical treatment, put him on unpaid leave, made it retroactive and informed the EEOC untruthfully that Chad requested the leave.

Traditionally, adverse employment actions include decisions affecting a significant change in employment status, such as hiring, firing, granting leave, demoting or failing to promote, assignment with significantly different responsibilities, or decisions changing benefits or compensation. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998).  Under these definitions, Defendant's unilateral decision to put Plaintiff on unpaid leave qualifies as an adverse action.

**B. Defendant Wholly Failed to Engage in the Good Faith Interactive Accommodation Process**

Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability. "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." *E.E.O.C. v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 621 (5th Cir.2009). "This court has recognized that 'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.' " *Id.* (quoting *Taylor v. Principal Fin. Grp.,* 93 F.3d 155, 165 (5th Cir.1996)). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C. v. Agro Distrib.,* 555 F.3d 462, 471 (5th Cir.2009).

"The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Id.*"The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins,* 487 F.3d at 315. ""[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir.1999). However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Id.*

Instead of engaging in the good faith interactive process with Chad Austgen, Defendant sent him home. Defendant did not even inform Plaintiff he was on unpaid leave until over 10 days

later. Defendant never gave Plaintiff his job duties or job description to bring to his doctor to ascertain what jobs or duties he could do. Instead, Defendant sent Plaintiff home wondering if he even had a job with no money to pay the bills, he had to survive Ten days or so later, Defendant informed Plaintiff that he was on unpaid leave and ultimately told the EEOC that it was Plaintiff who requested the leave.

At the very least, Defendant let Plaintiff languish for the better part of the month, unpaid. That is a violation of the ADAA.

## V.       CONCLUSION

Direct evidence exists to substantiate Mr. Austgen claims that Defendant failed, at least for a period of time while he suffered an unpaid leave that the regarding him as disabled by putting him on unpaid leave.  A fact issue also exists as to whether Defendant failed, again for a period of time, to engage in a reasonably good faith interactive accomdaition request process.   For these reasons, the Court should summarily deny Defendant's Motion, and the award Mr. Austgen such other relief for which she is justly entitled.

Respectfully submitted,

*/s/ Ellen Sprovach*
Ellen Sprovach
Texas State Bar ID 24000672
USDC SD/TX No. 22202
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG & SPROVACH

ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I served a copy of this document by means of electronic transmission, on the 17th day of July 2019.

James Taylor
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, NE Suite 400
Atlanta, Georgia 30326
jtaylor@martensonlaw.com

*/s/ Ellen Sprovach*
Ellen Sprovach